# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### Southern Division

|  |  |
|---|---|
| | * |
| **JOHN MELADA**, | |
| | * |
| **Plaintiff,** | |
| | * |
| **v.** | **Case No.: GJH-20-1509** |
| | * |
| **GIANT OF MARYLAND, LLC** | |
| | * |
| **Defendant.** | |
| | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff John Melada brings this action against Defendant Giant of Maryland, LLC

("Giant"), alleging failure to accommodate in violation of the Americans with Disabilities Act,

42 U.S.C. §§ 12101 *et seq.*, as amended ("ADA") (Count I), as well as several violations of the

Uniformed Services Employment and Reemployment Rights Act of 1994, 38 U.S.C. §§ 4301 *et*

*seq.* ("USERRA"), including failure to reemploy by providing reasonable accommodations

(Count II), denial of benefits of employment (Count III), and retaliation/discrimination (Count

IV). ECF Nos. 1 & 14. Now pending before the Court is Plaintiff's Motion to Stay, ECF No. 15,

and Defendant's Motion to Dismiss, ECF No. 16.[1] No hearing is necessary. Loc. R. 105.6 (D.

Md. 2018). For the following reasons, Plaintiff's Motion to Stay is denied as moot, and

Defendant's Motion to Dismiss is granted, in part, and denied, in part.

---

[1] Also pending before the Court are several motions for extensions of time, ECF No. 7; ECF No. 10; ECF No. 25, which are granted, as well as Defendant's first Motion to Dismiss, ECF No. 9. Plaintiff subsequently filed an Amended Complaint, which Defendant then moved to dismiss, ECF No. 16. Defendant's first Motion to Dismiss is thus denied as moot.

I.      **BACKGROUND**[2]

Plaintiff began working at Defendant Giant, a grocery store that operates throughout the

Maryland area, in 1990. ECF No. 14 ¶¶ 8–9. At the time he was hired, he was in the U.S. Army

Reserves. *Id.* ¶ 11. He was placed on active duty in support of Operation Iraqi Freedom in 2003

and 2004. *Id.* ¶ 12. He returned to work at Giant after his tour and was promoted to manager in

2009. *Id.* ¶¶ 10, 12. Plaintiff then went on active duty again to serve in Operation Enduring

Freedom in Kuwait in 2012 and 2013. *Id.* ¶ 12.

In 2013, Plaintiff began receiving care from the Veteran's Administration ("VA") for

moderate Chronic Obstructive Pulmonary Disease ("COPD") as well as Chronic Adjustment

Disorder with Anxiety and Depression ("Anxiety Disorder") and insomnia. *Id.* ¶¶ 13–15. The

conditions are permanent and have been identified as service-connected. *Id.* ¶ 16. They also

ultimately led to Plaintiff's medical retirement and placement on the Permanent Disability

Retirement List with 31 years of service on February 2, 2016. *Id.* ¶ 17.

In November 2014, Plaintiff was working at the Giant store in Silver Spring (Store #1).

*Id.* ¶ 18. During the week of Thanksgiving, Plaintiff asked his store manager, Michael Balderson,

if he could alter his schedule in order to adjust to psychotropic medications prescribed by VA

psychiatrists. *Id.* ¶ 19. Specifically, Plaintiff did not want to work night shifts, which ended at

either 11:00 pm or 12:00 am, because, due to his 54-mile commute and the fact that he had to be

back at work at 7:00 am the next morning, he was unable to get sufficient rest between shifts,

making it difficult to adjust to his medication and impeding his recovery. *Id.* ¶¶ 19, 21–23, 25.

Plaintiff also asked for an established day off for VA appointments. *Id.* ¶¶ 19, 26. While

---

[2] For purposes of considering Defendant's Motion to Dismiss, the Court accepts the facts alleged in the Amended
Complaint as true. *See Aziz v. Alcolac*, 658 F.3d 388, 390 (4th Cir. 2011).

Plaintiff's manager, Mr. Balderson, was receptive to Plaintiff's requests, Giant's district manager, Timothy Baker, allegedly replied loudly, before Plaintiff even finished explaining his requests, that "nights are non-negotiable." *Id.* ¶¶ 20, 24. Mr. Baker agreed to allow Plaintiff to start work at 8:00 am but did not otherwise alter his schedule. *Id.* ¶ 27.

Plaintiff alleges a series of "acts of discrete hostility" by Mr. Baker following that conversation. *See id.* ¶ 29. First, during the week of Christmas 2014, Plaintiff had his holiday pay docked after calling in sick. *Id.* ¶ 30. Then, in March 2015, Plaintiff received "4s" on his annual review, indicating that he needed improvement. *Id.* ¶ 31. Plaintiff alleges that the review was unfair, as it was based on the Silver Spring store's performance the prior year, and Plaintiff had only begun working there in November. *Id.* ¶ 32. Additionally, Mr. Balderson told Plaintiff that Mr. Baker had told him to change Plaintiff's review to "4s" and that Mr. Balderson believed Mr. Baker "was trying to get back at Plaintiff." *Id.* ¶ 33.

Next, in May or June of 2015, Plaintiff was told he would be transferred to the Giant location at Wheaton Plaza, although he was instead transferred to Prince George's Plaza (Store #2). *Id.* ¶ 34. The Prince George's Plaza store required an even longer commute than before and only further exacerbated Plaintiff's problems. *Id.* ¶¶ 34–35. Two weeks later, Mr. Balderson told Plaintiff he was being transferred again. *Id.* ¶ 36. During that phone call, Plaintiff reminded Mr. Balderson of his request for accommodation, but there was a pause and then a dial tone, indicating that Mr. Balderson had hung up. *Id.* ¶ 38. Several weeks after that call, Plaintiff received a "sub-par" raise. *Id.* ¶¶ 40–41. Plaintiff complained about the raise and about the failure to accommodate his requests to alter his schedule to Jodie Kans, who worked in Giant's human resources department. *Id.* ¶¶ 41, 44. Three weeks later, Plaintiff was transferred again, this time to a Giant location in Olney, Maryland (Store #3). *Id.* ¶ 45.

The Olney store's manager, Marinane Romines, required Plaintiff to work every Sunday. *Id.* ¶ 47. Plaintiff told Ms. Romines about his requests for a modified schedule and asked whether Mr. Baker or Ms. Kans had talked with her about Plaintiff's requests. *Id.* ¶ 48. She said they had not and that he would need to discuss the issue with them. *Id.* Plaintiff was then told he was being transferred again in December 2015—first that he would be moved to Aspen Hill, and then later that he would instead be moved to Odenton. *Id.* ¶¶ 51, 54. Plaintiff was ultimately allowed to stay at Olney after appealing to Robin Moran, the Human Resource Director for the Region. *Id.* ¶ 54. Plaintiff also spoke to Ms. Moran about the denial of his requests for accommodations and explained that the denial was aggravating his anxiety disorder and contributing to panic attacks, but his requests were still not granted. *Id.* ¶¶ 53, 55.

Plaintiff also alleges that, during his time at the store in Olney, Defendant took actions reflecting animus based on Plaintiff's military service. *Id.* ¶ 50. Namely, Plaintiff was scheduled to work the day after his Army Reserve duties in West Hartford, Connecticut concluded, his vacation was scheduled during his drill weekend, and he did not receive a "comp day" for the Friday that he traveled to West Hartford to report for service in violation of Giant's policy of paying salaried managers during their Army Reserve duties. *Id.*

In January 2016, Plaintiff was transferred to the Giant location in Rockville (Store #4). *Id.* ¶ 56. He was allowed an established day off, but he still had to work some Sundays, and he was not given a fixed schedule. *Id.* ¶¶ 57–58. Additionally, he still worked some late nights— until 10:00 pm at the latest—and started work at either 6:00 am or 7:00 am unless he was scheduled to work late. *Id.* In October and again in December 2017, Plaintiff contacted two human resources officials at Ahold USA, Giant's corporate owner, repeating his requests for accommodations and the reasons he needed them. *Id.* ¶¶ 60–63. Plaintiff made a final request on

January 9, 2018, to Kendra Logan, a human resources specialist, and Michael Brusoe, the

Rockville store's manager. *Id.* ¶ 66. All three requests were ignored. *Id.* ¶¶ 63, 67.

Plaintiff filed a Charge of Discrimination with the EEOC on or around May 22, 2018. *Id.*

¶ 68. Three months later, Giant transferred Plaintiff to a store in Urbana, Maryland (Store #5). *Id.*

¶ 69. Soon after, Plaintiff contacted Antoinette Judy, a Giant Regional Vice President. *Id.* ¶ 70.

At Ms. Judy's direction, Plaintiff spoke with District Director Deanna Marion-Wilson and Ms.

Logan and reiterated his requests for accommodation. *Id.* ¶¶ 71–73. Ms. Logan asked that

Plaintiff submit updated medical information, and, on August 27, 2018, Plaintiff complied,

providing a letter from Dr. Joanna Y. Wong, a VA psychiatrist. *Id.* ¶¶ 74–75. The letter stated:

> [Plaintiff] reports worsening of his anxiety with panic attacks when there is a change to
> his work schedule and environment due to sensitivities to noises and crowds. His mood
> also worsens with sleep disturbance when there are changes in his work environment. He
> will benefit from [1] working two to three days with one day off, and [2] not working
> later than 7 pm to minimize sleep disturbances and to minimize PTSD triggers. He will
> also benefit from [3] not working on Sundays.

*Id.* ¶ 76.

Plaintiff alleges that, beginning in August 2018, he had Sunday and Tuesday off. *Id.* ¶ 29.

On October 19, 2018, Ms. Logan and Cindy Dorsey met with Plaintiff to review the letter and

promised to provide the requested accommodations. *Id.* ¶ 77. Although Plaintiff was apparently

given a fixed schedule in August 2018, as he had requested before, he alleges that Giant

nevertheless ignored the doctor's recommendation that he be scheduled to work no more than

two to three days in a row. *Id.* ¶ 78. His new schedule required him to work four days in a row,

from Wednesday through Saturday. *See id.* ¶ 79. Plaintiff does not state whether he was required

to work after 7:00 pm.

Plaintiff filed suit against Defendant Giant in this Court on June 6, 2020, alleging

violations of USERRA and the ADA. ECF No. 1. Defendant was served on August 24, 2020.

ECF No. 7 ¶ 2. On or around September 11, 2020, Valerie Snell and Maurice Barnes informed

Plaintiff that he was under investigation for not properly completing a USCIS Form I-9 form.

ECF No. 14 ¶ 81. Plaintiff alleges that both individuals knew that Plaintiff, as a perishable

manager, was not trained to complete the hiring-related paperwork. *Id.* On October 8, 2020, Ms.

Kans told Plaintiff that an audit of the 25 I-9 forms he had completed showed three mistakes, and

he would thus be terminated. *Id.* ¶ 82. Plaintiff alleges that such an audit—and termination for

unintentional mistakes without a warning or remedial training—is unprecedented. *Id.* He further

alleges that the stated basis for his termination is false and pretextual and that the real reason is

retaliation for his exercise of his protected rights under USERRA. *Id.* ¶ 83.

Plaintiff amended his Complaint to include the additional allegations concerning his

termination on October 19, 2020, bolstering his retaliation claim under USERRA. ECF No. 14.

On October 31, 2020, he moved to stay the case until March 1, 2021, to allow him to receive a

Right to Sue letter from the EEOC allowing him to bring a retaliation claim under the ADA. ECF

No. 15 at 2.[3] Defendant responded to Plaintiff's Motion to Stay on November 16, 2020, ECF No.

18, and Plaintiff replied on November 30, 2020, ECF No. 20. Because that date has passed, the

Court denies Plaintiff's Motion to Stay as moot.

On the same day that Plaintiff moved to stay the case, October 31, 2020, Defendant

moved to dismiss Plaintiff's Amended Complaint. ECF No. 16. Plaintiff responded to

Defendant's Motion to Dismiss on December 11, 2020, ECF No. 23, consenting to the dismissal

of Count II, failure to reemploy by providing reasonable accommodations in violation of

USERRA, without prejudice, *see id.* at 29. Defendant replied on January 18, 2021. ECF No. 28.

---

[3] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

II.     STANDARD OF REVIEW

Defendant argues the Court should dismiss this action for failure to state a claim under

Federal Rule of Civil Procedure 12(b)(6). A motion to dismiss under 12(b)(6) "test[s] the

adequacy of a complaint." *Prelich v. Med. Res., Inc.*, 813 F. Supp. 2d 654, 660 (D. Md. 2011)

(citing *German v. Fox*, 267 F. App'x 231, 233 (4th Cir. 2008)). Motions to dismiss for failure to

state a claim do "not resolve contests surrounding the facts, the merits of a claim, or the

applicability of defenses." *Prelich*, 813 F. Supp. 2d at 660 (quoting *Edwards v. City of*

*Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). To overcome a Rule 12(b)(6) motion, a

complaint must allege sufficient facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009). A claim is plausible when "the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id*.

In evaluating the sufficiency of the plaintiff's claims, the Court accepts factual

allegations in the complaint as true and construes them in the light most favorable to the plaintiff.

*See Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*,

407 F.3d 266, 268 (4th Cir. 2005). However, the complaint must contain more than "legal

conclusions, elements of a cause of action, and bare assertions devoid of further factual

enhancement." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir.

2009). Indeed, the Court need not accept unsupported legal allegations, *see Revene v. Charles*

*Cty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual

allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations

devoid of any reference to actual events, *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d

844, 847 (4th Cir. 1979). The Court should not grant a motion to dismiss for failure to state a

claim unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *GE Inv. Priv. Placement Partners II v. Parker*, 247 F.3d 543, 548 (4th Cir. 2001) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 249–50 (1989)).

## III.    DISCUSSION

### A.  ADA – Count I: Failure to Accommodate

The Americans with Disabilities Act of 1990 (the "ADA") prohibits discrimination by employers against qualified individuals with a disability. 42 U.S.C. § 12112. The ADA bars not only "disparate treatment because of an employee's disability," but also "the failure to make 'reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability,'" and "'denying employment opportunities to a job applicant or employee,' where the denial of the employment opportunity 'is based on the need . . . to make reasonable accommodation.'" *Shin v. Univ. of Md. Med. Syst. Corp.*, 369 F. App'x 472, 479 (4th Cir. 2010) (quoting 42 U.S.C. § 12112(a); *id.* § 12112(b)(5)(A); *id.* § 12112(b)(5)(B)). In a failure-to-accommodate case brought under the ADA, a plaintiff establishes a *prima facie* case by demonstrating "(1) that he was an individual who had a disability within the meaning of the statute; (2) that the [employer] had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position; and (4) that the [employer] refused to make such accommodations." *Rhoads v. F.D.I.C.*, 257 F.3d 373, 387 n.11 (4th Cir. 2001) (quoting *Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 6 (2d Cir. 1999)). The parties do not appear to dispute that Plaintiff had a disability under the ADA and that the employer had notice of that disability. However, the parties heavily contest whether Plaintiff was denied reasonable accommodations.

8

Importantly, "[n]ot every job-related request by a disabled employee that is denied by her employer will subject the employer to liability for failure to provide a reasonable accommodation." *Fierce v. Burwell*, 101 F. Supp. 3d 543, 550 (D. Md. 2015). Instead, the ADA covers requests for reasonable accommodations that enable an employee to perform the essential functions of the job, 29 C.F.R. § 1630.2(o)(1)(ii), or to "enjoy equal benefits and privileges of employment," 29 C.F.R. § 1630.2(o)(1)(iii). *See Mason v. Sun Recycling, LLC*, No. CV GLS-18-2060, 2020 WL 1151046, at *11 (D. Md. Mar. 9, 2020); *E.E.O.C. v. Life Techs. Corp.*, No. CV WMN-09-2569, 2010 WL 4449365, at *5 (D. Md. Nov. 4, 2010); *Feist v. La. Dept. of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 453 (5th Cir. 2013). Therefore, "the denial of a request by a disabled employee c[an] only subject the employer to liability if there is 'a causal relationship between the disability and the request for accommodation,' or, in other words, if 'the requested accommodation was necessary in order for [her] to perform the essential functions of [her] job,'" *Fierce*, 101 F. Supp. 3d at 550 (quoting *Gaines v. Runyon*, 107 F.3d 1171, 1175 (6th Cir. 1997)), or in order to enjoy equal benefits and privileges of employment. *See Hamel v. Bd. of Educ. of Harford Cty.*, No. CV JKB-16-2876, 2018 WL 1453335, at *12 (D. Md. Mar. 23, 2018) ("[A]n accommodation must be sought as a means to alleviate disability-induced limitations that impact an employee's job-related activities."). Moreover, if multiple accommodations would enable the employee to perform essential functions or enjoy equal benefits and privileges, the employee is not entitled to his preferred accommodation among them. *See, e.g.*, *Fink v. Richmond*, 405 F. App'x 719, 723 (4th Cir. 2010) ("[T]he ADA and the Rehabilitation Act do not require that an employer provide a disabled employee with a perfect accommodation or an accommodation most preferable to the employee.").

Two cases previously decided by this court are particularly instructive. *See Shivers v. Saul*, 2020 WL 7055503, JKB-19-2434 (D. Md. Dec. 2, 2020); *Fierce v. Burwell*, 101 F. Supp. 3d 543 (D. Md. 2015). In *Shivers*, the plaintiff, who suffered from a brain injury that caused cognitive deficits, made a number of requests for reasonable accommodations, which included a flexible schedule to accommodate his sleep/wake cycle, a large computer monitor, rest breaks, and assistance during meetings. 2020 WL 7055503, at *1. The court dismissed the plaintiff's complaint, finding that there were no factual allegations regarding "why his disabilities necessitated the requested accommodations" to perform the essential functions of his role. *Id*. at *5. In *Fierce*, the defendants denied the plaintiff's request to telework once a week to accommodate her depression. 101 F. Supp. 3d at 549. The court rejected the plaintiff's reasonable accommodation claim because she "fail[ed] to explain how her request was an accommodation that she needed to perform the essential functions of her job." *Id*. at 549–550.

Here, while different requests were made at different times,[4] in sum, it appears Plaintiff sought (1) a fixed schedule with (2) an established day off for VA appointments, (3) Sundays off, (4) no night shifts, and (5) a day off after every two to three days of work. In support of his requested accommodation, Plaintiff provided Defendant a letter from his doctor in August 2018, that explained Plaintiff would "benefit from [1] working two to three days with one day off, and [2] not working later than 7 pm to minimize sleep disturbances and to minimize PTSD triggers. He will also benefit from [3] not working on Sundays." *Id.* ¶ 76. According to the Amended Complaint, however, many of Plaintiff's requested accommodations were eventually granted.

---

[4] The parties do not dispute that, because Plaintiff filed his EEOC charge on May 22, 2018, any alleged failure to accommodate that occurred more than 300 days before that—in other words, before July 26, 2017—is time barred. *See Nance v. Maryland Dep't of Juv. Servs.*, No. PWG-14-1434, 2015 WL 1210654, at *4 & *5 n.6 (D. Md. Mar. 16, 2015); ECF No. 16-1 at 20; ECF No. 23 at 12.

Specifically, in 2016, Plaintiff was provided an established day off for VA appointments, *id.* ¶ 57, and in August 2018, he was provided a fixed schedule with Sunday and Tuesday off, *id.* ¶ 79.[5] The only accommodation Plaintiff plainly alleges was never addressed was the request to work no more than two to three days in a row. Defendant instead offered him an alternative accommodation—working four days in a row—which Plaintiff finds insufficient. *See id.* ¶ 78.

Similar to *Shivers* and *Fields*, however, Plaintiff failed to sufficiently allege that working no more than two to three days in a row was necessary for him to perform the essential functions of his role. As with his other requests, which appear to have eventually been granted, his doctor only states that a schedule requiring him to work no more than two to three days in a row would "benefit" Plaintiff. *Cf. Davis v. Lockheed Martin Operations Support, Inc.*, 84 F. Supp. 2d 707, 712–13 (D. Md. 2000) (finding a telework request was not reasonable where the plaintiff's doctor said the plaintiff was "well-suited to work from home" but also stated that she was able to work full time in the office with accommodations for her inability to sit). While Plaintiff does allege in the Amended Complaint that he needed "reasonable rest between shifts," ECF No. 14 ¶ 25, in light of the accommodations that were made—such as agreeing to move his start time to 8:00 am while he was working at the Silver Spring store, *id.* ¶ 27, and providing an established schedule at the Urbana location, *id.* ¶ 79—Plaintiff has not sufficiently alleged that it was

---

[5] It is not clear from the Amended Complaint if the requests to eliminate night shifts was ultimately granted.

necessary to only work two to three days in a row to perform his essential functions as opposed to four days in a row, as his schedule ultimately required.[6]

In his Opposition, Plaintiff also argues that his requested accommodation was reasonable under the portion of the applicable regulation defining "reasonable accommodation" as a modification that enables an "employee with a disability to enjoy equal benefits and privileges of employment as are enjoyed by [] other similarly situated employees without disabilities." 29 C.F.R. § 1630.2(o)(1)(iii). "Benefits and privileges of employment" may include working without pain, even if one is capable of performing the essential functions of the job with pain, *Hill v. Assocs. for Renewal in Educ., Inc.*, 897 F.3d 232, 239 (D.C. Cir. 2018); *Gleed*, 613 F. App'x at 539, being able to access and utilize workplace facilities, even if not explicitly encompassed in one's job description, *Feist*, 730 F.3d at 453 (finding a reserved parking space may have been reasonable where it made the plaintiff's workplace accessible to her); *Scalera v. Electrograph Sys., Inc.*, 848 F. Supp. 2d 352, 366 (E.D.N.Y. 2012) (recognizing that a reasonable accommodation could include providing higher toilet seat and hand rail at entrance for disabled employee), and participation in mandatory workplace trainings and meetings through the use of an interpreter, *Cadoret v. Sikorsky Aircraft Corp.*, No. 3:15CV1377 (JBA), 2018 WL 806548, at *4 (D. Conn. Feb. 9, 2018).

Even assuming that the absence of anxiety and panic attacks would be considered a benefit and privilege of employment, Plaintiff has not alleged facts sufficient to state a claim that

---

[6] Plaintiff argues that he does not need to establish that the reasonable accommodation was "necessary" in order to establish his claim, relying on out-of-circuit authority such as *Edwards v. U.S. Environmental* for the proposition that the requested accommodation need only be "an effective means of responding to plaintiff's disability." 456 F. Supp. 2d 72, 100 (D.D.C. 2006). Courts in this district, however, have required more than mere effectiveness. *See, e.g.*, *Shivers*, 2020 WL 7055503; *Fierce*, 101 F. Supp. 3d 543; *Davis*, 84 F. Supp. 2d 707. Moreover, in this case, Plaintiff has failed to connect his request for accommodation to his disability even under the lower standard outlined in *Edwards*, as he has not alleged facts showing how working only two to three days in a row would have alleviated the limitations caused by his anxiety disorder.

Defendant failed to provide a reasonable accommodation under § 1630.2(o)(1)(iii). First, Plaintiff's doctor's note, stating that he would "benefit from [1] working two to three days with one day off," ECF No. 14 ¶ 76, neither suggests nor explains how such an accommodation would have alleviated Plaintiff's anxiety and panic attacks. Aside from that note, the Complaint does not contain any facts linking the requested accommodation to Plaintiff's disability. Moreover, Defendant provided Plaintiff a fixed schedule with Sundays and Tuesdays off that required him to work four days in a row. While this was not Plaintiff's preferred schedule, Plaintiff has not alleged that this accommodation was unreasonable or ineffective—that a fixed schedule working only two or three days in a row with Sundays off would have alleviated his anxiety while a fixed schedule working only four days in a row with Sundays off did not. *See Reyazuddin v. Montgomery Cty., Maryland*, 789 F.3d 407, 415 (4th Cir. 2015) ("An employer may reasonably accommodate an employee without providing the exact accommodation that the employee requested."); *Huber v. Wal-Mart Stores, Inc.*, 486 F.3d 480, 484 (8th Cir. 2007) ("[A]n employer is not required to provide a disabled employee with an accommodation that is ideal from the employee's perspective, only an accommodation that is reasonable."). Accordingly, Plaintiff has failed to allege that working only two to three days in a row would have enabled him to enjoy benefits and privileges at work that he was otherwise denied.

Because Plaintiff failed to allege the denial of reasonable accommodations that would have enabled him to perform the essential functions of the job or facilitated his enjoyment of the same benefits and privileges as his coworkers, Defendant's motion is granted with respect to Count I.

### B.  USERRA

Congress enacted USERRA to (1) encourage non-career military service by eliminating or minimizing disadvantages to civilian careers; (2) minimize disruption to service member's lives and their employers by providing for prompt reemployment; and (3) prohibit discrimination against members of the armed forces. 38 U.S.C. § 4301(a). "Because USERRA was enacted to protect the rights of veterans and members of the uniformed services, it must be broadly construed in favor of its military beneficiaries." *Hill v. Michelin N. Am., Inc.*, 252 F.3d 307, 312–13 (4th Cir. 2001).

"Four sections of USERRA outline its framework: 4311, 4312, 4313, and 4316." *Butts v. Prince William Cty. Sch. Bd.*, 844 F.3d 424, 430 (4th Cir. 2016). Section 4311 prohibits discrimination on the basis of military service, sections 4312 and 4313 entitle veterans to reemployment after military service and prescribe the positions to which they may return, and section 4316 prohibits discharge of reemployed veterans without cause within a set period of time. *See id.* (citing *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 303 (4th Cir. 2006); *Petty v. Metro. Gov't of Nashville & Davidson Cty.,* 687 F.3d 710, 716 (6th Cir. 2012)). Because Plaintiff has voluntarily dismissed his claims brought under the reemployment provisions, §§ 4312 and 4313, only Plaintiff's claims arising out of § 4311 remain. The Court will first address Plaintiff's § 4311(a) denial of benefits claim before turning to Plaintiff's § 4311(b) retaliation/discrimination claim.

### 1.  Count III: Denial of Benefits

Section 4311(a) prohibits the denial of any benefit of employment on the basis of an individual's military service. USERRA defines "benefit of employment" in relevant part as "any advantage, profit, [or] privilege . . . that accrues by reason of an employment contract or

agreement . . . [including] . . . the opportunity to select work hours or location of employment."

38 U.S.C. § 4303(2). To state a claim, plaintiffs must show that their military status was a

"motivating factor" in the decision, even if it was not the sole factor. *See* 38 U.S.C. § 4311(c)(1);

*Hill*, 252 F.3d at 312. The burden then shifts to the employer to show that the action would have

been taken even in the absence of the employee's military status. *See* 38 U.S.C. § 4311(c)(1);

*Hill*, 252 F.3d at 312.[7]

Plaintiffs alleges that the benefits he was denied include stability—he was transferred

several times between stores—having his holiday pay docked in 2014, receiving a poor annual

review in 2014, receiving a substandard raise, being denied a comp day for travel to Army

Reserve duties, and not being paid his regular salary for the duration of his Army Reserve duties

in violation of Defendant's policy. ECF No. 23 at 20, 21 n.4. Even assuming without deciding

that Plaintiff has alleged a denial of benefits, Plaintiff has not alleged that any of these alleged

denials was based on his military service.

Courts consider a "variety of factors" in determining whether an employer had

discriminatory motivation, including:

> proximity in time between the employee's military activity and the adverse employment
> action, inconsistencies between the proffered reason and other actions of the employer, an
> employer's expressed hostility towards members protected by the statute together with
> knowledge of the employee's military activity, and disparate treatment of certain
> employees compared to other employees with similar work records or offenses.

*Sheehan v. Department of Navy*, 240 F.3d 1009, 1014 (Fed. Cir. 2001); *see also Hill*, 252 F.3d at

314. "While issues of improper motivation generally involve factual determinations properly left

---

[7] "Unlike the familiar *McDonnell Douglas v. Green*, 411 U.S. 792 (1973), framework for Title VII discrimination cases, USERRA imposes a more stringent standard on the employer to demonstrate that its adverse employment actions were not pretextual." *Bunting v. Town of Ocean City*, 409 F. App'x 693, 696 n.* (4th Cir. 2011) (unpublished).

for a jury, '[m]ere conclusory allegations of motivation do not preclude summary judgment.'"

*Francis*, 452 F.3d at 307 (quoting *Yarnevic v. Brink's, Inc.*, 102 F.3d 753, 757–58 (4th Cir.

1996)).

Here, the bare facts on which Plaintiff relies to establish a causal connection between the

denials of benefits and his military service—that in 2015, he was scheduled to work the day after

his Army Reserve duties concluded, that his vacation was scheduled during his drill weekend,

and that he was not given a "comp day" for travel to his Army Reserve duties in violation of

Defendant's own policies—are insufficient, without more, to state a plausible claim that

Defendant targeted Plaintiff on the basis of his military service. *Cf. Harwood v. Am. Airlines,

Inc.*, 963 F.3d 408, 415 (4th Cir. 2020) (finding the plaintiff's "factual allegations of

discriminatory intent," consisting of "a few scattered comments made by airline employees"

years before were "far too attenuated to make them relevant to the airline's conduct").

Additionally, to the extent he argues he has been denied benefits on the basis of his

service-connected disability, that argument likewise fails, as USERRA does not extend to

disability discrimination. *See, e.g.*, *Carroll v. Delaware River Port Auth.*, 89 F. Supp. 3d 628,

633 (D.N.J. 2015) ("[A] USERRA plaintiff has the initial burden of demonstrating that his

military *service*, as distinct from a *disability* resulting from service, was a substantial or

motivating factor in the employer's decision.") (emphasis in original); *Felton v. City of Jackson,

Mississippi*, No. 3:18CV74TSL-RHW, 2018 WL 2994363, at *4 n.5 (S.D. Miss. June 14, 2018)

("The court additionally observes that plaintiff cannot state a cognizable USERRA

discrimination claim for failure to accommodate his alleged service-connected disability. Section

4311 'does not require accommodation, which is fundamentally different from an equal-

treatment norm.'" (quoting *Sandoval v. City of Chicago, Illinois*, 560 F.3d 703, 705 (7th Cir.

2009))). Finally, to the extent he argues the denials of benefits stemmed from his exercise of his rights under USERRA, ECF No. 23 at 20, those arguments are better analyzed in the discussion of Count IV, which alleges retaliation for the exercise of his rights under USERRA. *See* ECF No. 14 ¶¶ 111–21.

Therefore, Plaintiff's denial of benefits claims will be dismissed.

### 2.  Count IV: Retaliation/Discrimination[8]

Section 4311(b) prohibits discrimination or the taking of any adverse employment action against someone because that person acted to enforce a protection provided by USERRA or exercised a right under USERRA. 38 U.S.C. § 4311(b). As with § 4311(a), the plaintiff must show that the exercise of the right was "a motivating factor in the employer's action," while the employer, to defeat the plaintiff's claim, must "prove that the action would have been taken in the absence of such person's . . . exercise of a right." *Id.* § 4311(c)(2). Thus, in order to establish a *prima facie* case of retaliation, a plaintiff must plausibly allege: (1) that he engaged in statutorily protected activity; (2) an adverse employment action was taken against him; and (3) a causal connection exists between the two events. *See Clegg v. Arkansas Dep't of Correction*, 496 F.3d 922, 928 (8th Cir. 2007). Moreover, the adverse action must be "materially adverse." *See Lisdahl v. Mayo Foundation*, 633 F.3d 712, 721 (8th Cir. 2011).

Plaintiff first alleges that Defendant retaliated against him after he sought accommodations—the altered schedule—and let it be known that the accommodations were

---

[8] Although Plaintiff titles this claim "Retaliation/Discrimination," perhaps because § 4311(b) indeed prohibits discrimination, it is best understood as a retaliation claim, as § 4311(b) specifically prohibits discrimination in response to exercise of rights under USERRA. *See Wallace v. City of San Diego*, 479 F.3d 616, 625 n.1 (9th Cir. 2007) ("Although the term 'retaliation' is not used in USERRA, the gravamen of [§ 4311(b)] is to prohibit adverse employment actions taken in retaliation for the exercise of the rights provided by USERRA."); *see also Bunting*, 409 F. App'x at 695–96 (unpublished) (discussing § 4311(a) under the heading "Discrimination" and § 4311(b) under the heading "Retaliation").

service-related. ECF No. 14 ¶¶ 114–15. However, requests for accommodations, even those

related to accommodations for service-related disabilities, are not statutorily protected activities

under USERRA. *See McConnell v. Anixter, Inc.*, No. 4:17-CV-3010, 2018 WL 4440550, at *4

(D. Neb. Sept. 17, 2018), *aff'd*, 944 F.3d 985 (8th Cir. 2019); *Felton*, No. 3:18CV74TSL-RHW,

2018 WL 2994363, at *4. Accordingly, Plaintiff cannot bring a claim under § 4311(b) for alleged

retaliation on the basis of his requests for accommodations.

Plaintiff further alleges that Defendant terminated him in retaliation for bringing claims

against Defendant under USERRA in this lawsuit. ECF No. 14 ¶¶ 117–19. Filing suit against

Defendant under USERRA is a statutorily protected activity. *Cf., e.g.*, *Bunting v. Town of Ocean*

*City*, 409 F. App'x 693, 695 (4th Cir. 2011) (unpublished) (plaintiff alleged retaliation after

filing USERRA complaint); *see also* Department of Labor, *USERRA: A Guide to the Uniformed*

*Services Employment and Reemployment Rights Act* (available at

https://www.dol.gov/agencies/vets/programs/userra/USERRA%20Pocket%20Guide#20) (stating

that employers are prohibited from retaliating against anyone who files a complaint or

participates in an investigation or proceeding under the law). Moreover, termination is a

materially adverse employment action. *See, e.g.*, *Crews v. City of Mt. Vernon*, 567 F.3d 860, 869

(7th Cir. 2009).

But Plaintiff still must show that the lawsuit and the termination are causally connected.

Plaintiff primarily relies on temporal proximity to establish the requisite link. Specifically,

Plaintiff filed suit on June 6, 2020, and Defendant was served with process on August 24, 2020.

Drawing inferences in Plaintiff's favor, and in the absence of any statement to the contrary, the

Court can conclude that Defendant learned of the suit upon being served. *Cf. Clark Cty. Sch.*

*Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (analyzing the "temporal proximity between an

employer's *knowledge of* protected activity and an adverse employment action") (emphasis

added); *Edwards v. Council 67, AFSCME*, No. CV CCB-12-805, 2013 WL 5423916, at *2 (D.

Md. Sept. 26, 2013) (recognizing the date that the defendant became aware of the EEOC charge

as the relevant date for determining "temporal proximity," not the date the charge was filed).

Plaintiff alleges that on or around September 11, 2020, about 18 days later, he was placed under

investigation for errors he had made while completing USCIS I-9 forms. ECF No. 14 ¶ 81. Then,

on October 8, 2020, 45 days after Defendant was served, he was terminated after 30 years of

employment with Defendant due to an audit revealing three mistakes in the 25 I-9 forms Plaintiff

had completed. *Id.* ¶ 118. Plaintiff additionally alleges that he "was offered no warning or

remedial training" and that "[d]uring his thirty (30) year career at Giant, Plaintiff has never heard

of such audits being performed on an individual manager," calling into question Defendant's

stated basis for firing him. *Id.*

At the Motion to Dismiss stage, Plaintiff's allegations are sufficient to state a claim of

retaliation against Defendant. "Although it is not the only factor to be considered,

'[d]iscriminatory motivation under the USERRA may be reasonably inferred from a variety of

factors, including proximity in time between the employee's military activity and the adverse

employment action.'" *Sutherland v. SOS Int'l, Ltd.*, 541 F. Supp. 2d 787, 793 (E.D. Va. 2008)

(quoting *Sheehan*, 240 F.3d at 1014). Here, Defendant fired Plaintiff 45 days after being served

with a lawsuit. Drawing all inferences in Plaintiff's favor, this time period is short enough to

show causation. *See Westmoreland v. Prince George's Cty.*, No. CV TDC-14-0821, 2015 WL

996752, at *16 (D. Md. Mar. 4, 2015) ("Courts have found very close temporal proximity when

the protected activity and adverse action were six weeks apart."); *Jones v. Coll. of S. Maryland*,

No. PWG-14-3869, 2016 WL 8669915, at *5 (D. Md. Sept. 23, 2016) (finding 43-day gap

between request for FMLA leave and termination sufficient to establish a causal connection);

*Wilkes v. Argueta*, No. 1:16CV260, 2017 WL 1215749, at \*5 (M.D.N.C. Mar. 31, 2017)

("Courts have found very close temporal proximity where two months or less lapsed between the

alleged protected activity and the adverse employment action.") (listing cases); *cf. Perry v.*

*Kappos*, 489 F. App'x 637, 643 (4th Cir. 2012) (noting that three- or four-month lapses between

the protected activity and discharge are too long to establish causation); *King v. Rumsfeld*, 328

F.3d 145, 151 & n.5 (4th Cir. 2003) (finding a ten-week separation was long enough to "weaken

significantly," although not "undercut" an inference of causation in that case). Accordingly,

Plaintiff has alleged a plausible case of retaliation in violation of § 4311(b), and Defendant's

motion is denied with respect to Count IV.

## IV.    CONCLUSION

For the foregoing reasons, the parties' motions for extensions of time, ECF No. 7; ECF

No. 10; ECF No. 25, are granted; Defendant's first Motion to Dismiss, ECF No. 9, and Plaintiff's

Motion to Stay, ECF No. 15, are denied as moot; and Defendant's second Motion to Dismiss,

ECF No. 16, is granted, in part, and denied, in part. A separate Order follows.


Dated: <u>July 19, 2021</u>                                                    _____/s/_____

                                                                              GEORGE J. HAZEL
                                                                              United States District Judge