**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

JOHN MELADA                                  *

          **Plaintiff**                        *

v.                                                         *    **Case No. 8:20-cv-01509-PJM**

GIANT OF MARYLAND, LLC,          *

                                *

          **Defendant**
_____/

**PLAINTIFF'S OBJECTIONS TO MAGISTRATE'S ORDER DENYING IN PART**
**PLAINTIFF'S REQUEST THAT JODIE KANS BE COMPELLED**
**TO ANSWER NON-PRIVILEGED DEPOSITION QUESTIONS, AS ASKED (ECF NO. 101)**

Plaintiff John Melada ("Melada"), by and through undersigned counsel, hereby respectfully appeals an Order by U.S. Magistrate Judge Gina Simms, (ECF Doc. 101), denying Plaintiff's request to ask Ms. Jodie Kans, in deposition, "whose idea" it was to review the other USCIS Forms I-9 completed by Plaintiff in conducting a human resources investigation of the Plaintiff, and for good cause, states as follows:

I.      **FACTUAL BACKGROUND**

This is a case arising under the USERRA[1] involving a long-time loyal grocery store manager of Giant Food, who shortly after filing a lawsuit complaining that Ms. Jodies Kans, a human resource representative did not provide him with sufficient accommodations for service-related injuries, was targeted and subject to a pretextual investigation and termination.  The evidence demonstrates that Ms. Kans, upset with the lawsuit, targeted the Plaintiff and pretextually terminated him based on allegations that the Plaintiff had "fraudulently" completed a USCIS I-9

_____

[1]      Uniformed Services Employment and Reemployment Rights Act of 1994, 38 U.S.C. §§ 4301 to 4333.

form for an applicant (whom he did not know, nor had any connection to).  Perhaps sensing the sheer weakness for firing such a trusted employee, Ms. Kans began searching for other "fraudulently" completed I-9 forms, which Plaintiff contends was done not for any legitimate purpose but in an attempt to strengthen an otherwise weak reason to terminate.

In the pursuit of discovery as to his retaliatory termination claims, Plaintiff deposed the regional human resources manager, Ms. Jodie Kans, who launched an investigation of the Plaintiff over an I-9 form he completed and made the decision to terminate Plaintiff's employment.  (Exh. 1, Kans Depos., pgs. 31:1-32:3, 171:8-171:20, 205:16-206:10, 304:10–307:21).  Notwithstanding the more than 300 objections made by defense counsel during her deposition (averaging nearly one objection per deposition transcript page),[2] it was Mr. Kans who curiously first asserted a privilege (and even nudged defense counsel) after being asked "whose idea" it was to review the other 45 I-9s completed by the Plaintiff during her investigation of the Plaintiff.  Thereafter, Defendant's counsel objected, instructed Ms. Kans not to answer these questions, and attempted to prevent Plaintiff's counsel from putting these questions on the record, as follows:

> Q. From September 10th of 2020, to October 8th of 2020, the investigation continued, didn't it?
> **A. I don't know.**
> Q. Well, 45 I-9s were reviewed.
> **A. Oh.  You're right.  I completely forgot about that.  Yes.**
> Q. Whose idea was that?
> **A. The I-9s, we pulled the I-9s – I had the I-9s pulled so we could look and see if we had any other issues regarding documentation for people working.**
> Q. Whose idea?
> **A. I believe its privileged.**
> Q. You believe – you are going to assert a privilege.
> **Mr. BALDWIN:**  I instruct you not to answer to the extent your answer would require you to reveal an attorney-client communication.
> Q. Whose idea was it to inspect the I-9's.
> **MR. BALDWIN:**  Same objection, same instruction.  Next question, please.
> **MR. HOFFMAN:**  There's a privilege?  Is your office involved in the termination and investigation of Mr. Melada?

---

[2]      Many of which were speaking objections.

**MR. BALDWIN:**  Do you have a question for the Witness, Counselor?

**MR. HOFFMAN:**  We are going to talk about this later.

**MR. BALDWIN:**  That's great.  Happy to.  Let's get going.

Q. Did Mr. Baldwin suggest that you review 45 I-9s?

**MR. BALDWIN:**  Objection.  Instruct you not to answer.  Next question.

Q. Did Ms. Constantino instruct --

**MR. BALDWIN:**  Same.  Objection.  Instruct you not to answer.  Next question.

**MR. HOFFMAN:**  No, I'm asking the question because we're going to put it on the record.  Just make your objections.

Q. Did Ms. Constantino suggest you inspect the I-9s?

**MR. BALDWIN:**  Same objection, same instruction.

Q. Did any lawyer within Giant or RBS or Ahold –

**MR. BALDWIN:**  Same objection, same instruction.  And you know it, Counselor.

**MR. HOFFMAN:**  I need to just ask the question and you can make the objection; is that okay?  Let's just do it that way.  I understand that this is probably uncomfortable, but if we're going to just get this –

**MR. BALDWIN:**  I'm perfectly comfortable, Counselor.

**MR. HOFFMAN:**  We'll see.

Q. Now, did anyone from – any lawyer for Ahold provide you the idea –

**MR. BALDWIN:**  Same objection, same instruction.

Q. to review the I-9s?

**MR. BALDWIN:**  Same objection, same instruction.

Q. Anyone from – any lawyer from RBS?

**MR. BALDWIN:**  Same objection, same instruction.  Counsel, she's not going to answer any questions about what she was told by counsel.

(Exh. 1, Kans Depos., pg. 304:10 – pg. 307:21).  Shortly after receiving the deposition transcript, Plaintiff began to raise his opposition to Defendant's objection to this line of questioning in various emails and communications with Defendant.  Due to a number of other pending discovery disputes, the Court referred all discovery disputes to Magistrate Judge Simms, who instituted a discovery motions procedure.  (ECF Doc. 60, 65).  Pursuant to this procedure, Plaintiff filed a letter with Judge Simms on October 28, 2022, regarding, among other things, the aforementioned issue regarding the objection during Ms. Kans' deposition.  (ECF Doc. 68).  Judge Simms then issued a Paperless Order prohibiting any further filings regarding any other discovery disputes on October 31, 2022.  (ECF Doc. 70).

At and following a discovery dispute hearing on November 4, 2022 relating to a Motion for Protective Order (ECF Doc. 48) and Motion for Sanctions (ECF Doc. 54), Judge Simms, among other things, directed the Parties to meet and confer regarding numerous discovery disputes, including the issue regarding the objection during Ms. Kans' deposition. (ECF Doc. 75, pg. 7-8). The Parties spent months discussing and conferring regarding these numerous issues, which included reaching compromises or resolutions on 30(b)(6) deposition topics, deposition transcript errata, document productions, and redacted documents. In the end, the Parties resolved all discovery issues except this issue of the objection during Ms. Kans' deposition. *See* (ECF Doc. 93, ¶4-6). Plaintiff renewed his request to brief this discrete issue. (ECF Doc. 93, ¶8).

In their attempts to resolve this issue, the Parties made good-faith attempts to resolve the issue through email and during a meet and confer video conference on February 7, 2023. (ECF Doc. 93, ¶6). The topic was also discussed during a meet and confer on January 27, 2023. At the Order of Judge Simms, transcripts of those meet and confers were provided to the Court, with Judge Simms indicating that she would review the transcript and then decide if additional briefing was required. (ECF Doc. 94, 95).

On April 13, 2023, Judge Simms held a discovery dispute hearing on the issue of the objecting during Ms. Kans' deposition. A transcript of that hearing is attached herein. (Exh. 2; Hearing Transcript). Following that hearing, Judge Simms issued an Order on April 18, 2023: (1) admonishing Plaintiff's Counsel for failing "to sufficiently meet and confer with opposing counsel to resolve this issue, rejecting, without a good faith basis, the repeated requests from Defendant's counsel to reach a compromise," and declining but threatening to sanction Plaintiff's counsel, (2) permitting Plaintiff to depose Ms. Kans as to whether it was her idea to review the other I-9 forms, and additional questions related to other steps she took in performing the investigation and who

4

else was involved to the extent they had not been previously asked, and (3) if Ms. Kans answers that it was not her idea to review the other I-9 forms, that Plaintiff could then ask her if she consulted with counsel about her investigation into Plaintiff's I-9 forms, and she answered in the affirmative, additional questions about what steps she took after consulting with counsel, to the extent they had not been previously asked.  Notably, however, Plaintiff is barred from asking "whose idea" it was to review the other 45 I-9s completed by Plaintiff, and none of the permitted lines of questioning would reveal such information.  *See* (ECF Doc. 101).

## II.    LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 72(a), a party may appeal a Magistrate Judge's Order to a District Court Judge.  "A party may serve and file objections to the order within 14 days after being served with a copy."  Fed R. Civ. P. 72(a).  The District Court Judge reviews the Magistrate Judge's Order under the clearly erroneous standard for factual findings, and the 'contrary to law' standard for legal findings.  *See McCormick & Co., Inc. v. Ryder Integrated Logistics, Inc.*, 2023 WL 2433902 at *2 (D. Md. Mar. 9, 2023) (" 'The 'clearly erroneous' standard applies to factual findings, while legal conclusions will be rejected if they are 'contrary to law.' ' *Sky Angel U.S., LLC v. Discovery Commc'ns, LLC*, 28 F. Supp. 3d 465, 479 (D. Md. 2014) (*quoting MMI Prods. v. Long*, 231 F.R.D. 215, 218 (D. Md. 2005)); *see also* Fed. R. Civ. P. 72(a) ("The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law.").

Notably, the 'contrary to law' standard is equivalent to *de novo* review.  *See MedImmune Oncology, Inc. v. Sun Pharmaceutical Industries, Ltd.*, 2008 WL 11411384 at *1 (D. Md. Apr. 2, 2008) ("Discovery motions are quintessential nondispositive motions, so the district court reviews findings of fact for clear error and conclusions of law de novo. When reviewing a question of law, however, the standard is de novo. 32 Am. Jur. 2d Federal Courts § 143 (citing Int'l Ass'n of

Machinists and Aerospace Workers v. Werner-Masuda, 390 F. Supp. 2d 479 (D. Md. 2005) )."); *see also Clinch Coalition v. United States Forest Service*, 597 F. Supp. 3d 916, 921 (W.D. Va. 2022) ("In the context of Rule 72(a), this 'contrary to law' standard is equivalent to de novo review." *Harleysville Ins. Co. v. Holding Funeral Home, Inc*., No. 1:15CV00057, 2017 WL 2210520, at *2 (W.D. Va. May 19, 2017)."); *Thompson v. Dolan*, 2015 WL 13692124 at *1 (E.D. Va. Jun. 18, 2015) ("However, '[f]or questions of law there is no practical difference between review under Rule 72(a)'s contrary to law standard and a de novo standard.' *Bruce v. Hartford*, 21 F. Supp. 3d 590, 594 (E.D. Va. 2014) (Cacheris, J.) (alterations, citations, and internal quotation marks omitted)."); *Patton v. Johnson*, 915 F. 3d 827, 833 (1st Cir. 2019) ("a magistrate judge's answers to questions of law, whether rendered in connection with a dispositive motion or a non-dispositive motion, engender de novo review. *See PowerShare* [*, Inc. v. Syntel, Inc.*], 597 F.3d [10,] 15 [(1st Cir. 2010)] (explaining that, for questions of law, "there is no practical difference between review under Rule 72(a)'s 'contrary to law' standard and review under Rule 72(b)'s de novo standard"); *Alldread v. City of Grenada*, 988 F.2d 1425, 1434 (5th Cir. 1993) ("Though this court reviews a district court's factual findings under a clearly erroneous standard, legal conclusions are reviewed de novo. *Chance v. Rice Univ*., 984 F.2d 151 (5th Cir.1993); *Palmco Corp. v. American Airlines, Inc*., 983 F.2d 681 (5th Cir.1993).").

## III.    ARGUMENT

    a.   <u>The Court's Decision to Effectively Uphold Defendant's Objection During the Deposition of Ms. Kans and Deny Plaintiff's Right to Ask "Whose Idea" It Was To Review The Other I-9 Forms Completed by Plaintiff Is Contrary to Law.</u>

It is axiomatic that an attorney may not instruct a witness to not answer a question unless to assert a privilege. *See Boyd v. University of Maryland Medical Systems*, 173 F.R.D. 143, 145 (1997) ("It has been the law in this circuit for 20 years that lawyers may not instruct witnesses not

to answer questions during a deposition unless to assert a privilege. *Ralston Purina Co. v. McFarland*, 550 F.2d 967 (4th Cir.1977)") (Grimm).  As previously explained by this Court:

> "(1) pursuant to Fed.R.Civ.P. 26(b)(1), a deponent may be questioned about any matter which is relevant to the litigation, which is not privileged, and the fact that the information sought may not ultimately be admissible does not mean that it is not discoverable; (2) pursuant to Fed.R.Civ.P. 30(d)(1) and Guideline 5(d), any time that a lawyer instructs a deponent not to answer a question except as authorized by Rules 30(d)(1) or 30(d)(3) the instruction is presumptively improper… It must be emphasized that any instruction not to answer a deposition question which does not comply with Fed. R. Civ. P. 30(d)(1) and (3) and Guideline 5(d) is presumptively improper."

*Boyd*, 173 F.R.D. at 147.

Defendant objected (or rather, the witness initially asserted herself) to the question of "whose idea" it was to review the other 45 I-9s completed by Plaintiff on the basis of attorney client privilege.  Therefore, the critical question in this discovery dispute is whether or not that privilege was appropriately asserted during an active deposition.

However, the Magistrate Judge, respectfully, failed to even consider this question.  Judge Simms never even reached this paramount issue.  Instead, the Magistrate Judge based her decision on relevance.  *See* (Exh. 2, pg. 29-30) ("I just don't simply agree with that view.  I don't think it is an identity of the person that matters.  I think it is whether or not it is her idea or not that matters.").  Indeed, the only time the Magistrate Judge even addressed the issue of whether or not the privilege was properly asserted was a couple minutes she spent debating Defense Counsel on whether or not the identity of the idea giver was privileged.  But as the transcript reflects, this conversation spans but a few pages of a 54-page transcript.  *See* (Exh. 2, pg. 16-19).  Moreover, the Magistrate Judge never moves beyond this brief academic discussion to consider whether or not Defendant behaved properly in asserting a privilege during the deposition.

The Magistrate Judge is instead persuaded by Defense Counsel that there are other "more relevant question[s]" and proceeded down a line of questioning concerning what Defense Counsel

(and what the Magistrate Judge ultimately adopted) believed to be more appropriate.  *See* (Exh. 2, pg. 19).  After this, the Magistrate Judge never revisits this critical (indeed, threshold) question of whether or not the privilege was appropriately asserted, and she failed to make a ruling on that question.[3]

The Magistrate Judge's failure to address whether or not the privilege had been properly asserted is contrary to law.  Just as an attorney cannot direct a witness to not answer a question merely because he thinks it is irrelevant, the Magistrate Judge's decision is improperly based because she is fundamentally making an evidentiary ruling on relevance, for which she has not been assigned, rather than on whether the objection and direction for Ms. Kans to not answer was properly asserted.  As Plaintiff's attempted to argue, but which the Magistrate Judge did not acknowledge, "[w]e are at the discovery phase. We are not ruling on a motion in limine with respect to admissibility."  (Exh. 2, pg. 8); *see also Boyd*, 173 F.R.D. at 147 ("a deponent may be questioned about any matter which is relevant to the litigation, which is not privileged, and the fact that the information sought may not ultimately be admissible does not mean that it is not discoverable.").  The Magistrate Judge had not been assigned to make evidentiary rulings on relevance or admissibility and the Magistrate Judge certainly did not rule that the discovery should not be had based on proportionality or burden.  Nor could any such argument be reasonably made since Defendant cannot plausibly argue that merely disclosing the identity of an idea giver is unduly burdensome.

In ruling on the question of relevance rather than whether the objection was properly asserted, the Magistrate Judge sets a dangerous precedent that blurs otherwise bright lines of deposition conduct, *see Boyd*, *supra*, and only encourages bad behavior during depositions.  It is

---

[3]    In fact after this part of the hearing, the Magistrate Judge only uses the word privilege two more times, and only when re-summarizing Plaintiff's allegations.  *See* (Exh. 2, pg. 29).

hard to imagine how counsel was able to direct a witness at a deposition to not answer a question based on a baseless claim of privilege and then this decision turned on relevance. Relevance is not a basis to instruct a witness not to answer. *Kane v. Lewis*, No. CV AMD-08-1157, 2009 WL 10681966, at *2 (D. Md. May 6, 2009) ("relevance is not a proper basis for an instruction not to answer deposition questions") (Bredar, M.J.). Analytically, the manner in which the Magistrate Judge has proceeded in regards to this matter is contrary to the law as well as clearly established norms of deposition conduct and behavior.

But significantly, even if this Court was tempted to use the same analytical approach as the Magistrate Judge, the identity of the person who suggested to investigate the Plaintiff over 45 *other* I-9 forms *is relevant*.[4]

As Plaintiff argued during the discovery hearing, Ms. Kans has held herself out to be an extremely experienced human resource official who has conducted numerous investigations into employee misconduct, including integrity violations, of which Plaintiff is accused. If Ms. Kans, an experienced investigator, could not come up with the idea to review Plaintiff's other 45 I-9s

---

[4]     The standard for relevancy is broad. *Carr v. Double T Diner*, 272 F.R.D. 431, 433 (D. Md. 2010) ("The scope of relevancy under discovery rules is broad, such that relevancy encompasses any matter that bears or may bear on any issue that is or may be in the case. This is particularly true in discrimination cases.") (Nickerson, J) (citations omitted); *see also Est. of Bryant v. Baltimore Police Dep't*, No. ELH-19-384, 2020 WL 6161708, at *3 (D. Md. Oct. 21, 2020) ("Discoverable evidence is broader than admissible evidence because "it is 'relevance and not admissibility' that determines whether a matter is discoverable." *In re Verizon Wireless*, No. TDC-19-1744, 2019 WL 4415538, at *4 (D. Md. Sept. 16, 2019) (quoting *Herchenroeder v. Johns Hopkins Univ. Applied Physics Lab.*, 171 F.R.D. 179, 181 (D. Md. 1997)); *see Gross v. Morgan State Univ.*, No. JKB-17-448, 2018 WL 9880053, at *5 (D. Md. Feb. 9, 2018) (noting that "the Federal Rules of Civil Procedure 'impose a more liberal standard of relevance which does not turn on admissibility' " (quoting *Marvin J. Perry, Inc. v. Hartford Cas. Ins. Co.*, No. RWT-08-138, 2008 WL 11367475, at *2 (D. Md. Dec. 22, 2008))). Under this standard, "[r]elevancy has been 'broadly construed to encompass any possibility that the information sought may be relevant to the claim or defense of any party.' " *O'Malley v. Trader Joe's East, Inc.*, No. RDB-19-3273, 2020 WL 6118841, at *3 (D. Md. Oct. 15, 2020) (quoting *Revak v. Miller*, 18-CV-206-FL, 2020 WL 1164920, at *2 (E.D.N.C. Mar. 9, 2020)").

and had to turn to someone else to develop an investigatory strategy, then a reasonable jury could disbelieve that Ms. Kans was even concerned with I-9 forms in the first place and terminated the Plaintiff using a pretext reason.  *See* (Exh. 2, pg. 11-13).

It is not only relevant that Ms. Kans did not come up with the idea to review the other I-9s herself, the identity of the person who provided that information is also relevant.  The inferences that a jury could draw are radically different depending on who else may have provided this idea to Ms. Kans.  If, as the Magistrate Judge suggested, Ms. Kans had gotten the idea from a dog, (Exh. 2, pg. 24), it would suggest that perhaps Ms. Kans has a mental disability or perhaps is simply incompetent at her job.  On the other hand, a reasonable jury could infer that Ms. Kans herself knew that her justification for terminating the Plaintiff was weak if she needed to receive an idea from someone, such as an attorney, familiar with employment termination law who would assist her in creating a stronger non-retaliatory, business justification for a termination.  And a jury could easily conclude that looking for *other additional I-9 mistakes* was an attempt to *strengthen* the case against the Plaintiff.  Moreover, that inference is only further reinforced if the attorney in question served as in-house counsel for the company or a member of a law firm already working and representing the Defendant.  Plaintiff contends that looking at 45 I-9s was a clear attempt to dig for dirt.  Therefore, it is plainly obvious that the identity of the person *whose idea it was to dig for more dirt* on the Plaintiff is relevant to this case, because (i) why was it not Ms. Kans' idea; (ii) why was Ms. Kans turning to other persons for investigatory ideas; and (3) who gave the idea has implications.  The Magistrate Judge clearly erred in finding that the identity of the person was not relevant, and in so ruling, the Magistrate Judge is depriving the Plaintiff of proceeding with an important theory of their case.  *See O'Malley v. Trader Joe's E., Inc.*, No. CV RDB-19-3273, 2020 WL 6118841, at *3 (D. Md. Oct. 15, 2020) (observing that discovery rulings by a Magistrate Judge

will be reversed "where discovery restrictions prevent a litigant from 'pursuing a litigation theory.'" *quoting United States v. Ancient Coin Collectors Guild*, 899 F.3d 295, 323 (4ᵗʰ Cir. 2018) (alteration and citation omitted)); *Ardrey v. United Parcel Serv.*, 798 F.2d 679, 682 (4th Cir. 1986) ("Although it is 'unusual to find an abuse of discretion in discovery matters,' a district court may not, through discovery restrictions, prevent a plaintiff from pursuing a theory or entire cause of action."). What is wrong and harmful about the Magistrate Judge's Order is that it specifically prevents the Plaintiff from pursuing a plausible theory relating to pretext, and this is a clear abuse of discretion.[5]

There is no adequate substitute to the original question asked by Plaintiff and Plaintiff is entitled to ask that question and argue to a jury that the investigation into Plaintiff was not done in good faith when it appears she had to turn to company lawyers (not a dog) to find creative ways to justify Plaintiff's termination.

Finally, it is difficult to understand how the Magistrate Judge could make any final conclusions as to relevancy without the benefit of the *deposition transcript* itself. Indeed, even the Magistrate Judge herself seemed to acknowledge the issues caused by the lack of the deposition transcript at various points during the discovery hearing. *See* (Exh. 2, pg. 25, 29) ("you keep saying that, what is your factual basis to conclude that this is just mere business advice? No one is putting any facts in front of me. You didn't put a transcript in front of me.") ("there isn't anything in front of me in either of these two transcripts that tell me whether it was her idea or was not her idea, indeed I of course don't have her transcript."). Yet, the Magistrate Judge is the one who ordered that only the transcript of the meet and confers be provided to her, and belayed any actual supplemental briefing, which Plaintiff requested, and would have included the relevant portions of

---

[5]    We also contend that "whose idea" it was to generate further investigation into the Plaintiff is not only relevant but also *admissible*. That argument, however, can wait for another day.

the deposition transcript.  (ECF Doc. 94) ("Plaintiff seeks leave to brief the undersigned on this issue. The parties are hereby ORDERED to file a copy of the transcript (when it becomes available). The undersigned will review the transcript and decide whether additional briefing is required.").  Then, during the hearing itself, Plaintiff's Counsel even requested once more to submit the deposition transcript, which had not been reviewed by the Magistrate Judge, which the Magistrate Judge denied.  (Exh. 2, pg. 34).  While Plaintiff contends that relevancy is the wrong inquiry regarding this matter, to the extent the Magistrate Judge was going to consider the question of relevancy, it should have done so with a complete evidentiary record.  However, the Magistrate Judge denied any opportunity to present that complete evidentiary record, and therefore any findings on the matter of relevancy, drawn on an incomplete record, should be considered clearly erroneous.

Even if the Court is inclined to agree with the Magistrate Judge that this question is irrelevant, it is not so far beyond the scope of discovery or clearly abusive[6] that Defense Counsel, absent a legitimate assertion of privilege, would have had been correct to direct his witness to not answer this question.  The proper inquiry ultimately remains whether or not the attorney-client privilege was properly asserted, which the Magistrate Judge failed to address as a matter of law.

    b.  The Court's Finding That Plaintiff's Counsel Did Not Negotiate In Good-Faith Is Clearly Erroneous And Contrary to Law.

The Magistrate Judge's Order refers to Plaintiff's Counsel not negotiating in good faith. Nothing could be farther from the facts.  While the Magistrate Judge ultimately did not sanction Plaintiff's Counsel, the Magistrate Judge's finding must nevertheless be addressed given its

---

[6]    To this point, no plausible argument of abusive questioning can be made when Defense Counsel objected over 300 times during the deposition, yet on this particular line of questioning, did not even raise the objection until the witness herself raised the objection.  It is clear, given Defense Counsel's immoderate objections, that had this line of questioning been even remotely abusive, he would have surely objected on his own.

implication for this dispute and potential future discovery disputes.  *See* (ECF Doc. 101, pg. 1-2). Specifically, the Magistrate Judge found that Defense Counsel had asked five different times of Plaintiff's Counsel if they would be willing to talk about some possible alternate questions and reach a compromise, and that Plaintiff's Counsels' refusal to do so meant that Plaintiff's Counsel had failed to sufficiently meet and confer with Defendant's Counsel, without a good faith basis. (Exh. 2, pg. 6-7).

The Magistrate Judge's findings, however, are contrary to the law regarding good faith and the meet and confer requirements.  Meeting and conferring in good faith does not require that discovery disputes are always resolved informally between the parties.  In finding that Plaintiff's Counsel did not meet and confer in good faith, the Magistrate Judge appears to ignore the fact that the  February 7, 2023 meet and confer video conference was not the first meet and confer on this issue – the Parties had met and conferred on the issue on January 27, 2023 – or the fact that this issue had been raised and discussed with the Defendant numerous times since at least September 22, 2022. *See e.g.* (Exh. 3; Email from Warbasse, 9/22/22 @ 1:45 PM), (Exh. 4; Email from Liew, 10/12/22 @ 9:27 PM)[7].  Given this fact, the Magistrate Judge's finding suggests that the only outcome acceptable would have been for this issue to simply have been resolved by the Parties. *See* (Exh. 2, pg. 6) ("I guess I am a little bit sort of disappointed having said that, that you all weren't able to resolve this issue.").  But engaging in a good faith meet and confer does not mean that all discovery issues must always be resolved; if that were the case, then *no* discovery disputes could ever be brought before the Court for resolution.[8]  Nor does the history of the discovery

---

[7]    The Motion for In Camera Review also raised arguments regarding the matter at hand in this motion.  A draft of this Motion was sent to present Defendant with Plaintiff's arguments for their consideration as part of the attempts to resolve this issue informally.

[8]    Of course, couldn't the same be said of Defendant's counsel, who has stubbornly refused to compromise and allow the question.

disputes in this case indicate an unwillingness of Plaintiff's Counsel to meet and confer and negotiate in good faith. Indeed, a substantial amount of discovery disputes found resolution after numerous email communications and meet and confers, including over the 30(b)(6) deposition topics, the production of certain documents, the redaction of certain documents, and issues relating to deposition transcript errata sheets. That this one final discovery issue could not be resolved is not evidence that Plaintiff's Counsel is hostile or unwilling to meet and confer or discuss these discovery issues in good faith.

Additionally, Plaintiff's Counsels' refusal to further indulge Defendant's Counsel to consider alternate or compromise questions does not mean Plaintiff's Counsel failed to meet and confer in good faith. As noted above, alternate questions – including the ones proposed by Defense Counsel and adopted by the Magistrate Judge – are inadequate. No question proposed by Defense Counsel during the meet and confer would have provided the information Plaintiff sought – namely the identity of the individual who suggested Ms. Kans investigate the other 45 I-9s completed by Plaintiff. *See e.g.* (ECF Doc. 95-2, pg. 21). Nor is good faith achieved only when Parties decide to "split the baby" as to every discovery dispute. Such a discovery environment would incentive attorneys to raise even the most frivolous discovery objections just to drag unwarranted discovery concessions out of the opposing side. To be clear, Plaintiff's Counsel agrees that many discovery disputes can be resolved through discussion and compromise; but the strength of the discovery objection and the viability of any alternatives must also be considered when negotiating with opposing counsel over discovery disputes. If a discovery objection is not well founded and/or the alternatives simply will not suffice, an attorney should not be expected to simply meet their opponent halfway or else they are threatened with sanctions. Attorneys, who must vigorously

represent the interests of their client, cannot be expected to compromise just for the sake of compromise.

Plaintiff's counsel proceeded to analyze this dispute as to the threshold question of whether the *identity* of the individual whose *idea* was it to further investigate the Plaintiff was *privileged*. The identity of the person whose idea it was to further investigate the I-9s signed by the Plaintiff is not privileged and is not being asked used to determine litigation strategy.  *See Howell v. Jones*, 516 F.2d 53, 58 (5th Cir. 1975) ("The great weight of authority, however, refuses to extend attorney-client privilege to the fact of consultation or employment, including the component facts of the identity of the client and the lawyer.  8 Wigmore, Evidence § 2313 (MacNaughton Rev. 1961); McCormick Evidence § 90 (2d ed. 1972); 16 A.L.R. 3d 1047 (1967) … [T]his Court has previously held that the identity of a consulted attorney is not privileged and can be the subject of judicial inquiry.  *Goddard v. United States*, 131 F.2d 220 (5th Cir. 1948)"); *see also N.L.R.B. v. Harvey*, 349 F.2d 900, 904 (4th Cir. 1965) ("The existence of a relation of attorney and client is not a privileged communication.  The privilege pertains to the subject matter, and not the fact of the employment  as attorney, and since it presupposes the relationship of attorney and client, it does not attach to the creation of that relationship … The client or the attorney may be permitted or compelled to testify as to fact of his employment as attorney, or as to the fact of having advised his client as to a certain matter, or performed certain services for the client.").  Accordingly, the question should be compelled. *See Savignac v. Jones Day*, 586 F. Supp. 3d 16, 21 (D.D.C. 2022) (Ordering the names of attorneys that associate attorneys consulted to be produced, reasoning that the discovery was "not as a method to glean Plaintiffs' litigation strategy, but rather as an effort to identify witnesses who might have factual information relevant to an important issue in the case.

As a result, the Court concludes that this information is both relevant and not subject to the work-product privilege").

If it generally and widely is recognized that no attorney defending a deposition should interrupt and negotiate with the deposing attorney over how to phrase questions, why should Plaintiff have to consider compromise or alternative questions when it doesn't believe Defendant has made a convincing argument that it rightfully asserted attorney-client privilege during Ms. Kans' deposition? Moreover, if Plaintiff's Counsel was always required to indulge Defendant's Counsel's proposed alternatives, what prevents Defendant's Counsel from dragging the meet and confer process out indefinitely by making endless requests to consider this or that alternative, however untenable? It was clear to Plaintiff's Counsel that no alternate questions would have sufficed, and therefore, further discussion would have been unproductive. Plaintiff's Counsel should not be admonished simply because they determined there was no other possible way to resolve this issue except to bring it before the Court.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests the Court vacate those portions of the Magistrate Judge's Order (ECF Doc.101) denying Plaintiff from being able to ask Jodie Kans "whose idea" it was to review the other 45 USCIS I-9 Forms completed by Plaintiff and finding that Plaintiff did not sufficiently meet and confer with Defendant, and further permit Plaintiff to depose Jodie Kans to ask her "whose idea" it was to review the other 45 USCIS I-9 Forms completed by Plaintiff, and any reasonable follow-up questions

Respectfully submitted,


*/s/ Howard B. Hoffman*                    */s/ (with permission)*
Howard B. Hoffman, # 25965             Bradford W. Warbasse
Jordan S. Liew, #20509                 Federal Bar No. 07304
Hoffman Employment Law, LLC            P.O. Box 1284
600 Jefferson Plaza, Ste. 205          Brooklandville, Maryland 21022
Rockville, Maryland 20852              (443) 862-0062
(301) 251-3752                         warbasselaw@gmail.com
(301) 251-3753 (fax)
hhoffman@hoholaw.com
jliew@hoholaw.com

*Counsel for Plaintiff*                 *Counsel for Plaintiff*


## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of May, 2023, a copy of Plaintiff's Objections to Magistrate's Order Denying Plaintiff's Request that Jodie Kans Be Compelled to Answer Non-Privileged Deposition Questions, As Asked (ECF No. 101), along with all Exhibits and other attachments, was filed via the Electronic Case Filing System (ECF) maintained by the U.S. District Court for the District of Maryland and is available for viewing and downloading from the ECF system.


_____/s/_____
Jordan S. Liew