**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| JOHN MELADA, | |
| Plaintiff, | |
| v. | Civil Action No. 8:20-cv-01509 GJH |
| GIANT OF MARYLAND, LLC, | |
| Defendant. | |

## RESPONSE TO PLAINTIFF'S OBJECTIONS TO MAGISTRATE JUDGE'S RESOLUTION OF DISCOVERY ISSUE

Giant of Maryland, LLC, by counsel, submits its response to Plaintiff's Objections to U.S. Magistrate Judge Gina L. Simms's April 18, 2023, Order Related To Outstanding Discovery Disputes.

Plaintiff argues, without citation to legal authority, the Court was required to use his preferred analytical approach to resolve the discovery dispute he brought. The Court was not, however, required to decide in the first instance whether the communication at issue was privileged in order to resolve the issue, and the Court's compromise ruling provides Plaintiff the ability to obtain the information he claims is important to his case, while also protecting Giant from Plaintiff's efforts to end run the privilege.

Plaintiff also argues without legal support, that he should not have to compromise on his position simply because he believes it is meritorious, and that his failure to do so does not warrant an admonition from the Court. This plea comes despite the clear record that he failed to even consider rephrasing the question posed in order to avoid an unnecessary discovery dispute and serves primarily to underscore his unwillingness to compromise.

Plaintiff's objections should be overruled.

94828439v.2

## BACKGROUND

Plaintiff sued Giant in June 2020, alleging various ADA and USERRA claims.  ECF No. 1.  Following a successful motion to dismiss and two amended complaints, the sole remaining claim in the case is for alleged retaliation in violation of the ADA and USERRA.  ECF No. 46. That claim rests on a narrow set of facts:  In October 2020, Giant fired Plaintiff for falsifying information on a Form I-9 he executed as the company representative, and Plaintiff claims he was fired because he sued the Company four months earlier.  *Id.*

On August 20, 2020, Plaintiff, an Assistant Deli Manager at Giant, received a written reprimand from the District Director, Deanna Marion-Wilson, because he misrepresented his time and whereabouts earlier in the month.  Exh. 1, Letter of Reprimand.  Two days later, Plaintiff hired Alejandro Negron.  On the Form I-9 Plaintiff filled out with respect to Mr. Negron's hire, Plaintiff swore under penalty of perjury that Mr. Negron provided him with a **(i) Clarksburg High School ID and a (ii) Social Security Card**.  Exh. 2, Form I-9 signed by Plaintiff.

Caetlyn Roberts, a Customer Service Manager in the Urbana store where Plaintiff worked, had interviewed Mr. Negron for a job the week before.  Mr. Negron told her he did not have a photo ID of any kind, including a school ID.  When Ms. Roberts learned Mr. Negron had been hired, this was a "red flag" for her, and she reported it.  Exh. 3, statement of C. Roberts. Mr. Negron told Valree Stell, an HR business partner, that he did not have a school ID.  Exh. 4, Stell Report ("…He said he didn't have any of those things [including school ID].")

Plaintiff told Ms. Stell, however, that Mr. Negron did give him a school ID, and that he wrote down the social security number so he would not lose the card.  Exh. 5, Stell Dep. at 137, "…And John told me that he had a social security card and a school ID."  After speaking with

94828439v.2

Ms. Stell on September 10, Plaintiff texted Andrea Grajeda, who was Mr. Negron's father's then

girlfriend, and who participated in Mr. Negron's job interview.  Plaintiff wrote:

> Hello this is john from Giant Urbana.  I'm in troubled (sic) due to Alex I 9 could
> you call my HR Valree at 443-340-8387 to explain the hiring process.  **I could
> have sworn I saw his ss#/card from the phone**…and I remember you said you'll
> bring in all the paperwork.

> Exh. 6, Melada Sept. 10, 2020, text message (emphasis added), Melada Dep. Exh. 17.

Ms. Grajeda called Ms. Stell and told her that Mr. Negron gave Plaintiff a letter from the

Social Security Administration and a birth certificate.  Exh. 5, Stell Dep. at 166:18-21;167:1.

Plaintiff texted Theresa Bettson, his Store Manager:

> So the mom called Valree and explained what took place date Alex was
> hired…**she showed Florida birth certificate with social security #, application
> for a new social security card and another document validating social**…"

> Exh. 7, Melada text (emphasis added).

Ms. Grajeda also told Plaintiff, in response to his question about what was provided, that

"we presented you with a legal form that had Alex's social on it and birth certificate for proof

until we get his actual replacement ss card."  Exh. 8, Grajeda text, Melda Dep. Exh. 18.

On October 8, 2020, Jodie Kans, Giant's Regional Director of Human Resources, met

with Plaintiff.  Plaintiff told her he could not remember which documents he received from Mr.

Negron, but thought it was a Florida birth certificate and a social security number.  Exh. 9, Kans

Dep. Ex. 18, pg. 344.  Ms. Kans asked Plaintiff why he wrote on the Form I-9 that he was given

a school ID and social security card.  Plaintiff said he was confused because Mr. Negron's father

was on a conference call with them, and then said he did not know why he had done that.  *Id.*

Ms. Kans then asked Plaintiff about the certification on the form, and Plaintiff said, "Nobody

reads that and [I] was never trained."  *Id.*  Ms. Kans terminated Plaintiff's employment for

falsifying the Form I-9.

During her first deposition on June 23, 2022, Ms. Kans was asked whose idea it was to review other Form I-9s as part of the investigation into Plaintiff's Form I-9 falsification, and she first said she "had the I-9s pulled so we could look at see if we had any other issues regarding the documentation for people working." *Id.* at 304:18-21. She was asked a second time whose idea it was, and she responded she thought that was privileged. *Id.* at 305:1. Ms. Kans was then instructed not to answer to the extent her answer would require her to reveal an attorney client communication. *Id.* at 5:7. The question was asked a third time and the same instruction was given. Then, Plaintiff's counsel asked Defendant's counsel whether his office was involved in the investigation of Plaintiff, and asked whether each of the lawyers representing Giant instructed or suggested to Ms. Kans that she review Form I-9s Plaintiff had filled out. *Id.* at 305:13-21, 306:1-21, 307:1-21. Ms. Kans was given the same instruction in response to each question. When asked if Ted Garrett, who is not a lawyer, came up with idea, Ms. Kans was permitted to and did answer the question. *Id.* at 308:1-3.

Following his August 4, 2022, Plaintiff submitted an extensive errata sheet on September 14,2022. Exh. 10, Errata Sheet.[1] Upon receipt, Giant's counsel asked Plaintiff's counsel to withdraw the errata because it substantially changed Plaintiff's testimony. Exh. 11, Baldwin/Warbasse 9/22/22 e-mail exchange. Responding 45 minutes later, Plaintiff raised for the first time the assertion of privilege at Ms. Kans' June deposition, arguing that receipt of "routine business advice" was not privileged. *Id.* In response, Giant's counsel indicated the case citation Plaintiff provided on this issue was reviewed, and the case was distinguishable, because Plaintiff had not established any foundation supporting the idea Ms. Kans sought HR and not legal advice, particularly given the fact that the termination of Plaintiff's employment happened

---

[1] The Errata Sheet was ultimately withdrawn on or about February 3, 2023.

in the midst of his ongoing litigation.  Exh. 12, Baldwin 9/30/22 e-mail.  Giant's counsel also

made the point that Plaintiff received a similar instruction from his counsel during deposition

when he was unable to provide testimony regarding what happened at the termination meeting:

>Q:  Well, you knew we were going to talk about this [termination meeting] today, right?
>
>Objection.
>
>A:  No, sir. Yes, sir.
>
>Q:  You had no idea we were going to talk about the meeting where you got fired?
>
>A: Yes.
>
>Q: You did--you--
>
>Objection.  I got--I think that reveals privilege.  What he knows because he met with his attorneys.  So I'm going to instruct him not to answer that question.  What he knows would reveal his preparation.

Exh. 13, Melada Dep. at 232:4-16.

On October 12, 2022, Plaintiff sent a draft motion to compel on this issue to Defendant.

Exh. 14.  The draft motion made the same argument, *i.e.,* that Ms. Kans received HR and not

legal advice and, therefore, the assertion of privilege was not applicable.  *Id.*  Prior to Giant's

response due date, on October 18, 2022, the Court issued an order requiring the Parties to raise

discovery issues first by letter.  ECF No.  65.  On October 28, 2022, Plaintiff submitted a letter

request to the Court on the issue, again arguing Ms. Kans received HR and not legal advice.

ECF. No. 68.  The Court denied both Parties' letter requests as premature.  ECF. No. 74.

In the ensuing discussions between counsel regarding various discovery issues primarily

related to how to address the Court's granting in significant part Giant's Motion for Protective

Order with respect to a Rule 30(b)(6) deposition, the issue of Ms. Kans' deposition testimony,

along with other issues, seemingly lost relative importance and fell by the wayside.  Exh. 15, E-

mail and letter correspondence between counsel January 17-27, 2022. In the last of these correspondences, recognizing that compromise regarding deposition designations and other stipulations could not likely be reached, Giant instead offered to produce witnesses for additional deposition testimony subject to agreed parameters.

Given Giant's agreement to produce additional witnesses for deposition, a January 27, 2023, telephone conference effectively resolved the issues which had been under discussion. At that point, Plaintiff's counsel again raised the issue of Ms. Kans' deposition. ECF No. 95-1 at 28. Giant's counsel responded that he thought the issue had not been raised during the previous discussions, and that not all issues, such as Plaintiff's failure to properly search his phone for texts and the instruction he was given during his deposition not to answer, warranted continuing to argue about. *Id.* at 28-30.

During a subsequent telephone conference on February 7, 2023, Plaintiff's counsel raised the issue again, and despite several requests from Giant's counsel to do so, declined to compromise and took the position it was necessary to submit the issue to the Court. ECF No. 95-2, 6-26.

## **ARGUMENT**

### A.    **The Court's Ruling Is Well Within Its Discretion.**

Plaintiff offers no legal support for his argument that in resolving the discovery dispute the Court should have first determined whether the communication at issue was privileged, and Giant has found no such authority. In fact, the weight of the authority compels rejection of Plaintiff's argument, since it is well settled that courts have considerable discretion in managing dockets and resolving discovery disputes. *United States v. Ancient Coin Collectors Guild*, 899 F.3d 295, 323 (4th Cir. 2018) (court has wide latitude in controlling discovery); *E.E.O.C. v.*

*Freeman*, 288 F.R.D. 92, 98 (D. Md. 2012) (courts enjoy substantial discretion in the management of discovery and whether to grant motions to compel, and court may consider whether compelling discovery is necessary). As the *Freeman* court found, "a motion to compel may be denied if the circumstances render compelling an answer to the question 'otherwise unnecessary." *Id.* (citations omitted).

Here, the Court exercised its considerable discretion to resolve the discovery dispute, and Plaintiff offers no basis to take issue with the Court's manner of resolution. Plaintiff's objections should be overruled. "Indeed, the fact-specific character of most discovery disputes and the discretionary standard for resolution of discovery disputes under the Federal Rules suggest that magistrate judges ordinarily have ample discretionary latitude in disposition of those matters." *In re Outsidewall Tire Litig.*, 267 F.R.D. 466, 470 (E.D. Va. 2010).

**B.      The Answer Necessarily Reveals A Privileged Communication.**

If the Court were to consider the discovery dispute in the sequence Plaintiff hopes, the outcome would actually be worse for him, because the communication at issue is privileged and the Court could therefore simply deny the motion to compel.[2]

If Ms. Kans were to respond to Plaintiff's counsel's question, "Whose idea was that [to review 45 Form I-9s attested to by Plaintiff]?," with an answer indicating it was her lawyer's idea, this answer necessarily reveals that her lawyer told her or suggested to her that she review the Form I-9s. It is therefore privileged and/or protected by attorney work product doctrine. *Thurmond v. Compaq Computer,* 198 F.R.D. 475, 480 (E.D. Texas 2000).

---

[2] In addition to being correct on the merits, outright denial of Plaintiff's Motion promotes judicial economy and efficiency, since it means there will be no additional depositions and the case may proceed to summary judgment briefing. Plaintiff sued nearly three years ago.

In *Thurmond,* the court affirmed a special master's recommendation that answering the following questions would necessarily reveal attorney client communications: (a) who made the decision to undertake the testing project to identify potential problems with the FDC's in this case; and (b) who instructed Compaq employees not to keep notes during their testing. *Id.* As the special master stated and the court affirmed, and which holds true here, "An affirmative answer to either question would necessarily reveal the substance of an attorney client communication." *Id.* Other courts have similarly held. *See, e.g.*, *Guyton v. Exact Software North America*, Case No. 2:12-cv-502, 2015 WL 9268447, at * 6 (S.D. Ohio, Dec. 21, 2015) (if counsel asked witness to search for documents or interview employees, questions such as "…what were you asked to do," "were you asked to interview any employees" answers would be privileged and/or work product and instruction not to answer proper); *United States v. Landon*, Case No. 06-3734, 2006 WL 3377894, at * 3 (N.D. Ca. Oct. 30, 2006) (finding question, "How did the idea of forming the LP come about?" could reveal attorney client communication if the answer were "The idea of forming the LP came from a confidential consultation with my attorney," and directing that the question be rephrased to avoid this possibility):*Rodriguez v. Seabreeze Jetlev LLC,* Case No. 4:20-cv-07073, 2022 WL 3327925, at *4 (N.D. Ca. Aug. 11, 2022) (while finding questions like, "Was an attorney representing you on that telephone call" would not reveal attorney client communication, court noted "a witness may decline to answer questions that would reveal the specific nature of the legal advice sought).

During Plaintiff's deposition, his counsel seemed to acknowledge—and even stretch—the principle set forth in the above cases, but apparently wants it to apply only when advantageous to him. After not being able to offer any substantive testimony regarding what occurred at the termination meeting, Plaintiff was asked whether he knew he would be asked about the meeting

during his deposition.  This question sought to inquire as to Plaintiff's common-sense knowledge

of what might be at issue in his lawsuit, since he could not offer much, if anything, regarding

what happened at the meeting during which he was fired, and probe whether his lack of

recollection was genuine.  It was not intended to and did not ask him what he was told in

preparation for his deposition, or what he was told he might be asked at deposition.

Nevertheless, his counsel instructed him not to answer because he believed the answer would

reveal attorney client communications:

> *Q:  Well, you knew we were going to talk about this [termination meeting] today, right?*
>
> *Objection.*
>
> *A:  No, sir. Yes, sir.*
>
> *Q:  You had no idea we were going to talk about the meeting where you got fired?*
>
> *A: Yes.*
>
> *Q: You did--you--*
>
> *Objection.  I got--I think that reveals privilege.  What he knows because he met with his attorneys.  So I'm going to instruct him not to answer that question.  What he knows would reveal his preparation.*
>
> Exh. 13, Melada Dep. at 232:4-16.

Plaintiff should not be permitted to advance a position when it suits him and argue a

contrary position when it does not.  *Eagan v. Calhoun*, 347 Md. 72, 88, 698 A.2d 1097 (1997)

("Maryland has long recognized the doctrine of estoppel by admission, derived from the rule laid

down by the English Court of Exchequer ... that '[a] man shall not be allowed to blow hot and

cold, to claim at one time and deny at another.' '"); *DeGuiseppe v. Village of Bellwood*, 68 F.3d

187, 191–92 (7th Cir. 995) ("[C]ourts are under no compulsion to heed the shifting theories of

'chameleonic litigants' ").

94828439v.2

**C.**    **No Facts Demonstrating Routine HR Advice Was Involved.**

Plaintiff first argued he was entitled to the information because it was supposedly routine HR advice, not legal advice, and it was not therefore privileged.  This argument suffered from the fatal flaw that there are no facts to support it, and it is made without any acknowledgement whatsoever that the parties were in active litigation at the time Plaintiff was fired—indeed, that is the sole basis of the lawsuit.  Plaintiff has utterly failed to offer any facts which might establish that Ms. Kans was involved in a routine HR matter, or that she was seeking HR advice, or that counsel was routinely involved in such matters, indicating counsel was performing an HR and not a legal role.  Without any predicate facts to support it, this argument must be rejected, particularly where the parties were involved in active litigation at the time the communication occurred.

Plaintiff's reliance on the "HR advice" argument is further undermined by some of the follow-on questions at Ms. Kans' deposition.  These questions demonstrate Plaintiff was not interested in learning whether this was an HR matter, as much as he was interested in finding out whether undersigned counsel was involved.

> Q:    *There's a privilege? Is your office [Seyfarth Shaw LLP] involved in the termination and investigation of Mr. Melada?*

> Q:    *Did Ms. Costantino (one of Giant's outside counsel) suggest you inspect the I-9s?*

> Q:    *Did...any lawyer for Ahold provide you the idea...to review the I-9s?*

Exh. 9, Kans Dep. at 304:10, 307:21.

These questions demonstrate the true intent of the initial question and the fact that its response is privileged.  Plaintiff clearly wants to end run the privilege for apparently improper reasons.  Any argument that Ms. Kans was seeking routine HR advice should be rejected.

**D.**    **Origin Of The Idea Is Not Relevant, The Fact The I-9s Were Checked Is.**

The question in this case is whether Plaintiff was fired because he falsified a Form I-9, or because he filed a lawsuit four months earlier. Who came up with the idea to look at other Form I-9s Plaintiff attested to, is not relevant to that issue—it does nothing to move the needle one way or the other with respect to whether Giant's stated reasons for firing Plaintiff are its actual reasons, or whether they are made up, and his lawsuit is the real reason.

Plaintiff suggests that if Ms. Kans did not come up with the idea to review the other Form I-9s Plaintiff attested to, it might demonstrate she "has a mental disability or is perhaps simply incompetent at her job." Pl. Obj. at 10. Further, that if she did not come up with the idea, this means she needed help in creating a permissible business justification for firing plaintiff, and that "looking at 45 I-9s was a clear attempt to dig for dirt." *Id.* Plaintiff argues that these reasons demonstrate that whose idea it was to look at the other Form I-9s is somehow relevant. Plaintiff is mistaken.

If Ms. Kans did not come up with the idea to review the other Form I-9s Plaintiff swore under oath he properly reviewed, this does not mean she has a mental disability nor that she is incompetent. The leap of logic to make such an assertion is remarkable. No one of us is omniscient and the Court may take judicial notice of the fact that collaboration and consultation, particularly with experienced colleagues, yields results. The fact that she consulted with others and may have executed on their ideas, does nothing to show she is incompetent or that the investigation was fundamentally flawed.

Similarly, the idea that if Ms. Kans did not come up with the idea, it necessarily means she needed help in creating a business reason for firing plaintiff, is simply without basis and does nothing to demonstrate the origin of the idea is relevant. First, Ms. Kans testified why she

looked at other Form I-9s Plaintiff filled out, "I had the I-9s pulled so we could look and see if we had any other issues regarding documentation for people working."  This reason has nothing to do with looking for or creating another reason to fire Plaintiff.  Second, Plaintiff swore on the Form I-9 on behalf of the Company, that Mr. Negron gave him a school identification card and a social security card, which was false.  During the investigation, Plaintiff changed his position and claimed he was given a birth certificate and a social security card application.  Finally, Plaintiff failed to take responsibility for what he did or even admit it, instead he said, "Nobody reads that [the certification language] and [I] was never trained."  In other words, there was no need for any further justification to fire Plaintiff.

Finally, the idea that the Form I-9s were searched was an effort to dig up dirt on Plaintiff is, as the foregoing makes clear, unsupported by the facts and just plain wrong.  Ms. Kans searched the Form I-9s not to dig up dirt on Plaintiff, but to attempt to determine if there were any other problems with work authorization with respect to other Giant employees.  Moreover, given Plaintiff's false statement on the form, his shifting explanations and his failure to take responsibility—and the fact he had been warned about being untruthful just weeks before—there was no need to find any "dirt" on him.

E.    **Plaintiff's Counsel Were Properly Admonished.**

This issue could have been resolved and the need for court involvement eliminated by rephrasing the question, either at Ms. Kans' first deposition, or in advance of her second.  Giant's counsel tried repeatedly, as Judge Simms noted, and the transcript shows [ECF. No. 95-2, ppg. 17-25], to forge compromise on the issue.  Plaintiff's counsel refused.  Accordingly, and particularly after Judge Simms was quite direct in her previous instruction to the Parties that they cooperate with one another, an admonishment was entirely appropriate.  Indeed, as the Court

noted, counsel could have been sanctioned and, as such, they should feel fortunate with only an admonition.

Plaintiff argues that simply repeating his position and providing a case which is clearly distinguishable, constitutes a good faith effort to resolve the dispute. Particularly where the dispute involves a single deposition question, this is form over substance. Good faith negotiation requires compromise, which Plaintiff repeatedly declined to do. The admonition was appropriate.

Finally on this point, Plaintiff provides no authority to support the argument that he may object to a mere warning under Rule 72—as opposed to an actual decision or order, and counsel for Giant has found no authority. Rule 72, which permits objections to an "order," appears to foreclose the possibility, since an order in the context of Rule 72 necessarily means a decision or ruling. Permitting objections to a warning, particularly given the Court's significant discretion with respect to the conduct of discovery, would be burdensome to the Court and litigants alike, while also undermining the ability of U.S. Magistrate Judges to significantly contribute to the effective administration of busy federal court dockets. Plaintiff's objection should be overruled.

## <u>CONCLUSION</u>

The Court was well within its authority and discretion to fashion a compromise ruling. If the Court is now inclined to reevaluate that decision, the correct outcome is that the instruction not to answer was properly interposed, because the answer to the question necessarily reveals attorney client communications. Such a decision would end discovery in this case, avoid the need for Ms. Kans to sit for a third, albeit brief, deposition, and move the Parties to summary judgment.

94828439v.2

The Court's admonition to Plaintiff's counsel was well founded and Plaintiff has provided no authority for the idea that he may object to a warning, as opposed to an order or ruling.

RESPECTFULLY SUBMITTED,

SEYFARTH SHAW LLP

By:   /s/ Raymond C. Baldwin
Raymond C. Baldwin, Esq. #25449
rbaldwin@seyfarth.com
Christine M. Costantino, Esq. #28582
ccostantino@seyfarth.com

975 F Street, N.W.
Washington, DC 20004-1454
(202) 463-2400 (telephone)
(202) 828-5393 (facsimile)

*Counsel for Defendant Giant of Maryland, LLC*

94828439v.2

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing was filed and served via ECF, this 16th day of May 2023, upon:

Howard B. Hoffman # 25965
Jordan S. Liew # 20509
Hoffman Employment Law, LLC
600 Jefferson Plaza, Suite 205
Rockville, MD  20852
(301) 251-3752
(301) 251-3753 (fax)
hhoffman@hoholaw.com

Bradford W. Warbasse
Federal Bar No. 07304
401 Washington Avenue, Suite 200
Towson, MD  21204
(443) 862-0062
warbasselaw@gmail.com

*/s/ Raymond C. Baldwin*
Raymond C. Baldwin

*Counsel for Defendant*

94828439v.2